# Baskin's Appeal.

*Widow's Exemption, how lost.— When Claim must be made.*

1. The right of a widow to retain property to the value of $300 out of the estate of her deceased husband, allowed by the Act of Assembly, is waived unless claimed before the expenses of a full administration are incurred. By claiming and taking but part, she waives the residue, and cannot afterwards claim it out of the real or personal estate of deceased.

2. Where a widow took personalty as a part of her statutory allowance, without a formal appraisement, and the administrator appraised and sold the rest of the personal estate, and applied the proceeds to purchase-money of land which was due from the decedent, and took the legal title of the land to the heirs and representatives of the decedent, it was held that her claim for an appraisement of the real estate was too late, and that the administrator was not bound to make an appraisement in order to give her the balance of her $300, out of the realty, or for the purpose of setting off any portion of it to her.

APPEAL by B. F. Baskin, one of the administrators of G. W. Baskin, deceased, from the decree of the Orphans' Court of *Mercer county* confirming the report of the auditor, directing the administrators to appraise and set apart $300 worth of personal and real estate to L. Eveline Baskin, widow of deceased.

Dr. G. W. Baskin died on the 1st of April 1853, without issue, leaving a widow and mother surviving him, who were entitled to his estate. Letters of administration on the estate were granted to B. F. Baskin and S. R. Mason. An inventory of the personal property was taken and filed on the 21st day of May, A. D. 1853. The personal property was sold and the list duly filed on the 21st day of May, A. D. 1853. Prior to the taking and filing of the inventory and the sale of the personal property, the widow was duly informed of her legal rights as to $300 worth of property. She took all the personal property that she claimed as her own, having been purchased for her by her father. And also, by the consent of the mother of deceased and the administrators, selected such articles as she desired to retain as her own, of which no account was to be taken in the settlement of the estate. No claim or demand was made for the appraisement of $300 worth of property to be set apart to her until, as it is now claimed, some time in the summer of 1854, when she served a notice on one of the administrators (S. R. Mason), the exact tenor of which does not appear. The decedent had an equitable interest in a lot near Mercer, by article of agreement with J. McKnight. A large amount of purchase-money was due on the lot, and legal proceedings were about to be instituted for enforcing its collection. Under these circumstances, by the consent of both the heirs, the administrators paid the balance of the purchase-money

2 WR.—5

[Baskin's Appeal.]

out of the proceeds of the personalty, and took a deed for the property "to the heirs and legal representatives" of decedent.

On the 15th of August 1857, a petition for citation was presented, on which a partial account was filed on the 21st of January 1858. A final account was afterwards filed, which embraced the money paid out for said lot of ground, and allowed as a credit to the administrators.

On the 21st of January the widow presented her petition to the Orphans' Court, setting forth the death of her husband; the fact that he was at the time of his death the owner of real and personal property, the granting of letters of administration to Messrs. Baskin and Mason, and averring that they had neglected or refused to set apart for her the amount of $300 although requested so to do, and praying for a rule on them to show cause why they should not do so. The court granted the rule as prayed for, service of which was accepted by the administrator. The matter was then referred to an auditor to report, "whether there is any real or personal property of deceased which the petitioner may be entitled to have appraised, and what portion thereof she elects to retain, and whether she be entitled to retain it, and whether the administrators have neglected the duty enjoined on them by law or not, in the premises, and also such order as might be necessary for her relief if entitled to any."

The auditor made a report on the 24th of November 1859, containing a statement of the property owned by the deceased at the time of his death, and the articles taken by the widow; that her claim for an appraisement was not made until the summer of 1853 or 1854, after the appraisement and sale of the rest of the personal property; that, therefore, her taking of part of the personal property, was an election on her part to retain it as part of the $300 due to her under the Act of Assembly. He also, for reasons given in the report, decided that the real estate in the lot near Mercer was subject to her claim for the balance, and recommended that an order be made on the administrators for this purpose.

To this report exceptions were filed, under which the report was referred back to the auditor for further examination; but there being no other evidence submitted to him, he returned it to court without alteration, whereupon the court confirmed the report. The administrators then removed the case into this court, and assigned for error the following matters, to wit:—

The court erred in confirming the report of the auditor, and thereby deciding,

1. That the non-claimer, before the sale of the personal property, was not a waiver of the right of the widow to claim the benefit of the exemption law, and that she is now entitled to make claim of personal and real property.

[Baskin's Appeal.]

2. That if the property which she did retain was an election under the statute, she was entitled to make a further claim.

3. That a notice served on one administrator a year or more after the sale of the personal property of the decedent, was a demand upon the co-administrator of the widow's claim, and that she is entitled to demand it, by petition to the Orphans' Court, six years afterwards.

4. That, the accounts of the administrators having been settled, they may still be called upon to set apart property to the widow when it was not claimed at the proper time.

5. That the real estate, which was paid for out of the funds of all the heirs and deeded to "the heirs and legal representatives" of the decedent, was such property as could be selected by the widow, and be set apart by the administrators to her.

6. In approving of the recommendation of the auditor, "that an appraisement should now be made of the personal property, which the widow retained by consent of all persons interested for a period of nearly seven years, and also to appraise so much of the realty, paid for out of the funds of the heirs jointly, as will make up the difference between the personal property retained over six years ago, and three hundred dollars." In all which there was error.

*B. F. Baskin*, for appellant, cited and relied on Davis's Appeal, 10 Casey 257, insisting that the demand of the widow was too late.

*Stewart* and *Snyder*, for appellee.—Mrs. Baskin was not informed of her rights until after the sale; but when she was apprised of them, she demanded an appraisement at a time when there was personal property undisposed of (for she never formally accepted any of it), beside the equitable interest in the lot near Mercer. It was the duty of the administrators to set apart this portion of her husband's property for her use, and she relied on their assurances that her interests would be cared for. She was not consulted about paying for the land, and did not know how the deed was taken. The benefit of the Act of April 14th 1851 cannot be taken away without an express waiver. It was the duty of the administrators to notify the widow of her rights. The act of one binds the estate: Grace *v.* Sutton, 5 Watts 540; Rick's Administrator *v.* Gibson, 1 Barr 54; therefore, notice of her claim to one was sufficient. Davis's Appeal is not in point. because in that case an *appraisement* had been made. In this case nothing of the kind was done, it simply remained undisposed of.

The opinion of the court was delivered, January 7th 1861, by

[Baskin's Appeal.]

Woodward, J.—The auditor decided that the personal property taken by the widow with the consent of the administrators was an election by her to retain it as part of the $300 allowed her by the Act of Assembly; and that her claim for an appraisement, not made until the summer of 1853 or 1854, and after the administrators had appraised and sold the rest of the personalty, was too late, and that she must be held to have waived her right to that property.

Yet, after deciding these points in respect to the personalty, the auditor went on to decide that it was the duty of the administrators to make an appraisement of the real estate with a view of giving her, out of that, the balance of her $300. The real estate consists of $3\frac{1}{2}$ acres of land near the borough of Mercer, for which the decedent held articles of agreement in his lifetime, and on which there was a balance of purchase-money overdue at his death. The administrators paid that balance, and took a deed conveying the fee to the heirs and legal representatives of George W. Baskin, deceased. The legal effect of this conveyance was, in the judgment of the auditor, to subject the land to whatever claims could be lawfully set up against the estate of the decedent, and he regarded the widow's right to the residue of her statutory allowance as such a claim, and held that she might look to this land for satisfaction of it.

Without considering for the present the soundness of the auditor's construction of the deed, or entering into the question of the widow's rights, either under the deed or in respect to the equitable estate of which her husband died seised, it is sufficient for the purposes of the present case to say that the auditor erred in not holding the widow's claim for an appraisement too late, as well in respect to the realty as to the personalty. In Davis's Appeal, 10 Casey, it was decided that if the widow elect to retain less than the value of $300 she waives her claim to all which she neglects to claim. Her subsequent claim on the realty was held there to be too late. This case, and the others therein referred to, are decisive against Mrs. Baskin, on the point of time. She could not split up her demand into parts, claiming one part then and the other now. The statute entitled her to $300, to be claimed before the expenses of a full administration had been incurred. Because it was a personal right she might waive it; and, by claiming and taking but part, she waived the residue. And a waiver once made is past recall. It would be an intolerable inconvenience to administrators to allow a widow to take all she claimed out of the personal property, and then, after converting the residue and applying it to relieve the real estate of unpaid purchase-money, to allow her to come in and compel them to set off part of that to her. How are they to do it? They took the deed to the heirs and legal representatives. They

are not heirs, nor is it clear that they are representatives within the meaning of the deed. Would the Orphans' Court have jurisdiction of an estate so held? Is not the widow a "representative," and so a purchaser of the very estate which she calls on the administrators to divide to her? These questions show into what embarrassments the widow's unreasonable claim would plunge the administrators. And that, too, without the slightest equity on her part, for the proviso to the 5th section of the Act of 1851 is that her claim shall not affect or impair any liens for purchase-money of real estate. Her claim is virtually in opposition to purchase-money, for to that the proceeds of the personalty were applied. What rights she acquired thereby in the real estate, whether she is entitled to dower as widow, or to an undivided interest as a purchaser, is not now to be decided; but it is very clear that, whatever her rights, the statutory allowance is not among them.

Decree reversed at costs of appellee.